UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW J. MENDIETA,<br><br>                Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]<br><br>                Defendant. | Case No. C15-1937-JCC<br><br>**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

      Matthew J. Mendieta seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Mr. Mendieta contends the Administrative Law Judge (ALJ) erred in evaluating the medical opinions of Jessica B. Misner, M.D., David Widlan, Ph.D., Alex Fisher, Ph.D. and Gary L. Nelson, Ph.D. Dkt. 11. Mr. Mendieta contends that these errors resulted in a residual functional capacity (RFC) determination that failed to account for all of his limitations. *Id.* Mr. Mendieta further contends that this matter should be reversed and remanded for further administrative proceedings. Dkt. 11 at 16. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

# BACKGROUND

On October 30, 2010, Mr. Mendieta filed a Title II application for a period of disability and Disability Insurance Benefits and on October 17, 2012, filed a Title XVI application for Supplemental Security Income. Tr. 19, 231-51. Both applications allege disability as of April 12, 2010. *Id.* Mr. Mendieta's applications were denied initially and on reconsideration. Tr. 76-155. After the ALJ conducted a hearing on December 10, 2013, the ALJ issued a decision finding Mr. Mendieta not disabled. Tr. 19, 40-75.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Mr. Mendieta has not engaged in substantial gainful activity since April 12, 2010, the alleged onset date.

**Step two:** Mr. Mendieta has the following severe impairments: impaired strength in bilateral upper and lower extremities with no established etiology; impaired proprioception; pain and neuropathy in lower extremities without etiology; alcohol abuse with related insomnia; moderate depression; and anxiety.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Mr. Mendieta can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with some exceptions. He can lift and/or carry twenty pounds occasionally and ten pounds frequently, and can stand and/or walk about six hours, and sit about six hours, in an eight-hour day with normal breaks. He can never climb ladders, ropes or scaffolds, can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs and can frequently balance. He is able to tolerate occasional exposure to vibrating tools, machines and vehicles, should avoid dust, fumes, odors, gases, and poor ventilation, and should avoid hazardous working conditions such as proximity to unprotected heights and moving machinery. He is limited to tasks that can be learned in one year or less, is able to adapt to a predictable work routine with no more than occasional changes, and is limited to occasional and superficial interaction with the general public.

**Step four:** Mr. Mendieta can perform past relevant work as a buyer.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

**Step five:** Alternatively, as there are jobs that exist in significant numbers in the national economy that Mr. Mendieta can perform, he is not disabled.

Tr. 19-33. The Appeals Council denied Mr. Mendieta's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-4.[4]

## DISCUSSION

### A.   Medical Evidence

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a nonexamining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Id.* Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id.* at 830-31. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

   *1.   Jessica B. Misner, Psy.D.*

Mr. Mendieta contends the ALJ erred in evaluating the opinion of Dr. Misner. The Court agrees.

---

[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

1    Dr. Misner performed a psychological evaluation of Mr. Mendieta on January 8, 2013.

2 Tr. 630-32. Dr. Misner performed a clinical interview, conducted a review of Mr. Mendieta's

3 records and performed a mental status examination (MSE). *Id.* Based on this examination, Dr.

4 Misner diagnosed Mr. Mendieta with major depressive disorder, single episode, moderate;

5 anxiety disorder, NOS (not otherwise specified); substance use disorder, alcohol abuse episodic;

6 amphetamine abuse, in remission; cannabis abuse, episodic; cocaine dependence, in remission;

7 hallucinogenic abuse, in remission; sedative/hypnotic dependence, in remission; and indicated a

8 rule out diagnosis of cognitive disorder, NOS. Tr. 632. Dr. Misner also opined that,

> [the] results indicated that the claimant is experiencing debilitating symptoms of depression and anxiety as well as many difficulties with substance abuse. He is currently not able to manage his care without the assistance of his partner. In addition, his ability to reason and adapt to situations is limited. Given his current level of functional impairment due to depression, anxiety, substance abuse/dependence, and past trauma, it is more probable than not, that he would not be successful in work until the symptoms are successfully treated.

*Id.* Dr. Misner assigned Mr. Mendieta a GAF of 35. *Id.* The ALJ discounts Dr. Misner's

opinion for several reasons, none of which are sufficient.

The ALJ first discounts Dr. Misner's Global Assessment of Functioning (GAF) score of

35 as inconsistent with the GAF score of 62 assigned by Michael Stanger, M.D., in May 2011.[5]

---

[5] The GAF score is "a subjective determination based on a scale of 1 to 100 of 'the clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue,* 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000)). A GAF score falls within a given 10-point range if either the severity of symptoms or the level of functioning falls within the range. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders at 32. A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as having no friends or the inability to keep a job. *Id.* at 32. A GAF score of 31–40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." *Id.*

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

Tr. 30, 493, 632. However, the ALJ fails to explain how a GAF score assessment made over a year and a half prior to Dr. Misner's evaluation necessarily invalidates her opinion. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. ... In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). Here, other than pointing to the discrepancy in GAF scores the ALJ fails to explain why Dr. Stanger's GAF score is more persuasive or representative of Mr. Mendieta's condition than that of Dr. Misner.

Moreover, the record indicates that another provider assessed a GAF of 50 in October 2012, over a year after Dr. Stanger's GAF of 62 in May 2011 and several months prior to Dr. Misner's GAF assessment of 35 in January 2013 and that in September 2013 David Widlan, Ph.D. assessed a GAF of 45. Tr. 493, 549, 632, 682. These scores would tend to indicate a waxing and waning of Mr. Mendieta's symptoms rather than a clear inconsistency that warrants discounting the lowest score in favor of the highest. *See Perry v. Astrue*, 07-cv-276, 2009 WL 435123, at *13 (S.D. Cal. Feb. 19, 2009) (ALJ's citation to discrepancy in GAF score assessments made three years apart, without explanation, insufficient to invalidate doctor's opinion particularly given indication of deterioration in claimant's condition); *and see Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir.

1  2001) ("[The treating physician's] statements must be read in context of the overall diagnostic
2  picture he draws."). Thus, the mere fact that Dr. Stanger assessed a higher GAF a year and a half
3  earlier, was not an adequate reason, without further explanation, to discount Dr. Misner's
4  opinion.
5       The ALJ also notes that the lower GAF scores "are also inconsistent with Mr. Mendieta's
6  self-reported activities and the minimal and mild psychiatric observations in his medical record."
7  Tr. 31. However, the ALJ fails to identify which of the Mr. Mendieta's self-reported activities
8  and which "minimal and mild psychiatric observations" conflict with his "low" GAF scores or
9  explain the finding of inconsistency. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.
10 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own
11 interpretations and explain why they, rather than the doctors' are correct."). Moreover, as
12 discussed in more detail below, both Dr. Misner's and Dr. Widlan's evaluations reflect that they
13 observed rather significant psychological issues in examining Mr. Mendieta. The ALJ also
14 discounts GAF scores generally on the grounds that they are "highly subjective," "intertwine
15 psychological symptoms, physical impairments, and socioeconomic factors," and are "primarily
16 based upon subjective complaints." Tr. 31. However, these generic reasons why GAF scores
17 should be given little weight were not valid reasons to reject the opinions out of hand. *See, e.g.,*
18 *Vanbibber v. Colvin*, No. C-546-RAJ, 2014 WL 29665, at *2 (W.D. Wash. Jan. 3, 2014) (ALJ
19 must give specific, legitimate reasons for discounting a GAF score, and a general, boilerplate
20 discussion of why GAF scores do not correlate to a finding of disability is not sufficient);
21 *McCarten v. Colvin*, No. C14-0225-JCC, 2014 WL 4269 (W.D. Wash. Aug. 29, 2014) (finding
22 the ALJ's generic reasons for rejecting GAF scores insufficient, including the rationale that they
23 incorporated the claimant's subjective complaints as well as external factors not relevant to the

1 disability determination).  Although GAF scores are "not dispositive of mental disability for

2 social security purposes" they are relevant evidence that should be considered and can only be

3 rejected for specific and legitimate reasons.  *Vanbibber*, 2014 WL 29665 at *2-3 ("A GAF score

4 that is assigned by an acceptable medical source is a medical opinion as defined in 20 C.F.R. §§

5 404.1527(a)(2) and 416.927(a)(2), and an ALJ must assess a claimant's residual functional

6 capacity based on all of the relevant evidence in the record, including medical source opinions,

7 20 C.F.R. §§ 404.1545(a), 416.945(e).").  Accordingly, the ALJ erred in discounting Dr.

8 Misner's GAF score.

9      The ALJ also discounts Dr. Misner's opinion as based "almost entirely upon [Mr.

10 Mendieta's] subjective statements, which are not entirely credible."  Tr. 30.  "If a treating

11 provider's opinions are based to a large extent on an applicant's self-reports and not on clinical

12 evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating

13 provider's opinion."  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal citations

14 and quotation marks omitted).  "However, when an opinion is not more heavily based on a

15 patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the

16 opinion."  *Id.*  Moreover, "[a]n ALJ does not provide clear and convincing reasons for rejecting

17 an examining physician's opinion by questioning the credibility of the patient's complaints

18 where the doctor does not discredit those complaints and supports his ultimate opinion with his

19 own observations."  *Ryan v. Comm'r of Social Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

20 Here, although Dr. Misner considered Mr. Mendieta's symptom reports in her evaluation she did

21 not discredit those complaints herself and substantial evidence does not support the ALJ's

22 finding that she relied more heavily on Mr. Mendieta's self-reports than on her clinical

23 observations in reaching her opinions.  Rather, Dr. Misner's opinion appears to have a basis in

the abnormal results of the MSE as well as her personal clinical observations.

Specifically, although, as the ALJ notes, Dr. Misner did mention Mr. Mendieta's self-reported reliance on his partner in her medical source statement,[6] Dr. Misner also indicates that Mr. Mendieta was functionally impaired "due to depression, anxiety, substance abuse/dependence, and past trauma[.]" Tr. 632. Dr. Misner's evaluation indicates that Mr. Mendieta demonstrated poor attention/memory abilities, as well as poor judgment and abstract abilities and the MSE results and Dr. Misner's own personal observations appear to support her findings. Tr. 631. Specifically, the MSE results indicate that Mr. Mendieta was unable to complete serial 7's and serial 3's, indicating deficits in attention/concentration, that he required assistance to remember the third of three words after delay, indicating some memory impairment, and that his responses to questions on the MSE demonstrated poor judgment and abstract abilities. *Id.* Furthermore, Dr. Misner clinically observed that Mr. Mendieta exhibited flat affect and that he appeared agitated during the evaluation. *Id.* Dr. Misner also indicated that she had reviewed various medical records which, she noted, showed Mr. Mendieta was seen for irritability, insomnia, anxiety and depression, that he had difficulty managing financing due to spending sprees, and experienced anxiety about leaving the house. Tr. 630. The ALJ also notes that Dr. Misner suggests limitations in his ability to reason without describing any basis for her conclusion. Tr. 30. However, Dr. Misner's observation of significant symptoms of depression and anxiety as well as the MSE results which reflect limitations in the areas of attention, judgment and abstract abilities, may very well be the basis for her conclusion that Mr. Mendieta

---

[6] The ALJ notes that Mr. Mendieta's reported dependence on his partner is inconsistent with his statement to other treating providers and evaluators. Tr. 30. However, Mr. Mendieta fails to identify which statements to other providers he finds inconsistent or to explain the inconsistency. Moreover, as noted previously, mental health symptoms may wax and wane and, here, in addition to Mr. Mendieta's self-reports, Dr. Misner's findings were also supported by the results of her own clinical testing and observations. *See Garrison*, 759 F.3d at 1017.

is limited in his ability to reason. Tr. 631-32.

The ALJ also discounts Dr. Misner's evaluation as a whole as "vague and general and does not discuss [Mr. Mendieta's] ability to work with some limitations on his cognitive and social functioning activities." Tr. 30. The ALJ also specifically discounts Dr. Misner's statement that, given Mr. Mendieta's current level of functional impairment "it is more probable than not, that he would not be successful in work until the symptoms are successfully treated" on the grounds that "this statement is conclusory, without any explanation or basis[.]" *Id.* An ALJ may discount an opinion that is "'conclusory, brief, *and unsupported by the record as a whole or by objective medical findings*.'" *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)). However, even where an opinion is conclusory or brief, an ALJ may not reject that opinion if it is supported by the record and objective medical findings. *Id.* (Although doctor's opinion was in "check-box" form and contained almost no detail or explanation, the ALJ erred in discounting the opinion where the doctor's own treatment notes and the claimant's testimony supported that opinion). Here, as noted above, Dr. Misner's personal observations and the results of the MSE (although perhaps not detailed or quantified to the extent the ALJ would like) do indicate that Mr. Mendieta is functionally impaired in various areas by his anxiety, depression and substance abuse and offer support for her opinions that he is experiencing "debilitating" symptoms of depression and anxiety, that his ability to reason and adapt to situations is "limited" and that "it is more probable than not, that he would not be successful in work until the symptoms are successfully treated." Tr. 632. To the extent the ALJ found Dr. Misner's limitations vague or ambiguous or required additional detail regarding the basis for her opinion, he had a duty to conduct an appropriate inquiry. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If

the ALJ thought he needed to know the basis of [a doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them."); *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when *there is ambiguous evidence* or when the record is inadequate to allow for proper evaluation of the evidence.") (emphasis added).

The ALJ also notes that Dr. Misner's opinion that "it is more probable than not, that [Mr. Mendieta] would not be successful in work until the symptoms are successfully treated" is an opinion reserved to the Commissioner. Tr. 30.  20 C.F.R. § 404.1527(d)(1) provides that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(d)(1).  However, although an ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, … he cannot reject them without presenting clear and convincing reasons for doing so." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see* SSR 95-5p ("the regulations provide that the final responsibility for deciding issues such as [whether an individual is 'disabled'] is reserved to the Commissioner.  Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.").  Moreover, "an assessment, based on objective medical evidence, of [a claimant's] *likelihood* of being able to sustain full time employment" given his physical or mental impairments, is not the sort of conclusory statement like those described in 20 C.F.R. § 404.1527(d)(1).  *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012).  Here, as previously discussed, Dr. Misner's report contained objective medical findings, specifically the results of the MSE, which reflected impairments in the areas of attention,

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

memory, judgment and abstract abilities.  Thus, Dr. Misner's opinion that "[g]iven [Mr. Mendieta's] current level of functional impairment due to depression, anxiety, substance abuse/dependence, and past trauma, it is more probable than not, that he would not be successful in work until the symptoms are successfully treated" does not appear to be the sort of conclusory statement on an issue reserved to the Commissioner described in 20 C.F.R. § 404.1527(d)(1) but, rather, an opinion on the likelihood of his ability to work given his mental impairments.  *See Hill*, 698 F.3d at 1160.  Accordingly, this was also not a sufficient reason, without more, to reject Dr. Misner's opinion.   To the extent the ALJ required further explanation of the basis for Dr. Misner's opinion, he had a duty to conduct an appropriate inquiry and develop the record.  *See Smolen*, 80 F.3d at 1288; *Mayes*, 276 F.3d at 459–60.

In sum, the ALJ erred in discounting Dr. Misner's opinion.  The Court cannot conclude that this error was harmless.  An error is harmless only if it is "inconsequential to the ultimate nondisability determination" and a Court cannot consider an error harmless unless it can "confidently conclude that no reasonably ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).  Here, the Court cannot confidently conclude that no reasonably ALJ, when fully crediting Dr. Misner's opinion, could have reached a different disability determination.  On remand, the ALJ should develop the record as necessary and reevaluate Dr. Misner's opinion.

### 2. David Widlan, Ph.D.

Mr. Mendieta contends the ALJ erred in evaluating the opinion of Dr. Widlan.  The Court agrees.

Dr. Widlan performed a psychiatric evaluation of Mr. Mendieta in September 2013.  Tr.

1   680-96.  Dr. Widlan found Mr. Mendieta mildly limited in his ability to understand, remember,
2   and persist in tasks by following very short and simple instructions.  Tr. 682.  He found Mr.
3   Mendieta moderately limited in his ability to: understand, remember and persist in tasks by
4   following detailed instructions; perform activities within a schedule, maintain regular attendance,
5   and be punctual within customary tolerances without special supervision; learn new tasks;
6   perform routine tasks without special supervision; adapt to changes in a routine work setting;
7   make simple work-related decisions; be aware of normal hazards and take appropriate
8   precautions; ask simple questions or request assistance; maintain appropriate behavior in a work
9   setting; and set realistic goals and plan independently.  *Id.*  Dr. Widlan also found Mr. Mendieta
10  markedly limited in his ability to communicate and perform effectively, in a work setting and in
11  his ability to complete a normal work day and work week without interruptions from
12  psychologically based symptoms.  *Id.*

13       The ALJ discounts Dr. Widlan's opinion on the grounds that he "provided no explanation
14  or basis for these limitations."  Tr. 31.  As previously noted, an ALJ may discount an opinion
15  that is "conclusory, brief, and unsupported by the record as a whole or by objective medical
16  findings."  *Batson*, 359 F.3d at 1195.  However, here, Dr. Widlan's opinions appear to have a
17  basis in the abnormal results of the MSE, including Dr. Widlan's clinical observation of
18  restricted affect, impairment in insight and judgment (noting Mr. Mendieta likely becomes easily
19  overwhelmed), as well as scores in the marked range on both the Beck Depression Inventory II
20  (BDI-II) and the Beck Anxiety Inventory (BAI).  Tr. 680-96.  Such findings may very well be
21  the basis for Dr. Widlan's opinions of various moderate limitations as well as marked limitations
22  in the ability to communicate and perform effectively in a work setting and the ability to
23  complete a normal work day and work week without interruptions from psychologically based

symptoms.  Tr. 682.  To the extent the ALJ required further explanation of the basis for Dr. Widlan's opinion he had a duty to conduct an appropriate inquiry, not to reject the limitations out of hand.  *See Smolen*, 80 F.3d at 1288; *Mayes*, 276 F.3d 453, 459–60.  Accordingly, the ALJ erred in discounting Dr. Widlan's opinion on this basis.

The ALJ also discounted Dr. Widlan's opinion on the grounds that the limitations assessed were "inconsistent with the normal findings in his mental status examination."  Tr. 31.  Contradictions between a doctor's opinion and his own clinical notes may be a valid reason to discount the doctor's opinion.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, the results of Dr. Widlan's MSE were not entirely "normal" as the ALJ suggests.  Rather, as noted above, Dr. Widlan's MSE noted restricted affect, impairment in insight in judgment as well as scores in the marked range on the BDI-II and the BAI.  Tr. 683-88.  These results may well be the basis for Dr. Widlan's opined limitations and, absent further explanation from the ALJ as to how he believes Dr. Widlan's opinion conflicts with the results of his MSE, the Court is unable to discern the ALJ's path in reaching this conclusion.[7]  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (A court must uphold an ALJ's decision, despite a legal error, where "the agency's path may be reasonably discerned, even if the agency explains its decision with less than ideal clarity" … however, the agency must "set forth the reasoning behind its decisions in a way that allows for meaningful review.").  Accordingly, the ALJ also erred in discounting Dr. Widlan's opinion on this basis.

---

[7] The Commissioner makes various arguments as to what the ALJ might have intended in finding Dr. Widlan's opinion inconsistent with the MSE.  Dkt. 12 at 6.  However, the Commissioner's arguments amount to post-hoc rationalizations which the Court cannot rely upon in order to affirm the ALJ.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 13

1   The ALJ also discounts Dr. Widlan's assessment of "moderate" and "marked" limitations
2   as "too vague and general to be helpful."[8] Tr. 30.  However, Dr. Widlan's evaluation provides
3   definitions for these limitations noting that the term "'moderate' means there are significant
4   limitations in the ability to perform one or more basic work activity" and the term "'marked'
5   means a very significant limitation on the ability to perform one or more basic work activity.'"
6   Tr. 682.  Moreover, these are "terms which are commonly used to describe claimant's limitations
7   in the social security context."  *Dean v. Colvin*, No. C15-50310-RJB-JPD, 2015 WL 6158874, at
8   *7-8 (W.D. Wash. Sept. 29, 2015); *and see King v. Comm'r of Social Sec. Admin.*, 475 F. App'x
9   209, 209-10 (9th Cir. 2012) (Reinhardt, J. dissenting) ("Courts, physicians, vocational experts …
10  and other ALJs use the term 'mild to moderate' to describe and assess claimants' limitations
11  without any difficulty.").   Finally, despite the definition of their terms and their common usage
12  in this context, to the extent the ALJ still felt these terms were ambiguous, his duty was to re-
13  contact Dr. Widlan for clarification rather than to reject his opinion outright as "vague."  *See*
14  *Smolen*, 80 F.3d at 1288; *Mayes*, 276 F.3d at 459–60; *Dean*, 2015 WL 6158874, at *7-8.
15  Accordingly, the ALJ also erred in discounting Dr. Widlan's opinion on this basis.
16      In sum, the ALJ failed to give sufficient reasons for discounting Dr. Widlan's opinion.
17  This error was not harmless as the ALJ failed to include Dr. Widlan's opined limitations in the
18  RFC or in the hypothetical to the vocational expert.  As such, the Court cannot conclude this
19  error was "inconsequential to the ultimate nondisability determination."  *Stout*, 454 F.3d at 1055-
20  56.  On remand the ALJ should reevaluate Dr. Widlan's opinion.
21      ### 3. Alex Fisher, Ph.D. and Gary L. Nelson, Ph.D.
22      Mr. Mendieta also contends the ALJ erred in evaluating the opinions of nonexamining

---

23  [8] The Commissioner does not specifically challenge the claimant's allegation of error with respect to this reason for rejecting Dr. Widlan's opinion.  Dkt. 12.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 14

State agency psychological consultants Dr. Fisher and Dr. Nelson. The Court agrees.

In January 2013, Dr. Fisher reviewed Mr. Mendieta's medical records and opined that Mr. Mendieta was capable of carrying out at least simple instructions on a reasonably consistent basis, would have difficulty with extended concentration and maintaining attendance/pace in the workplace, and should be limited to no more than superficial contact with the general public. Tr. 111. In May 2013, Dr. Nelson confirmed Dr. Fisher's findings and also noted that Mr. Mendieta was capable of simple, repetitive work tasks, with social and adaptive limitations, regardless of drug use or abuse. Tr. 126, 132, 145. The ALJ gives these opinions "some weight" finding that,

> These opinions are vague and general. While they describe the minimum the claimant is capable of doing, i.e., simpl[e] tasks, they leave open the possibility he can do more complex tasks. Nor do they describe the extent of the difficulty the claimant would have with extended concentration and maintaining attendance/pace in the workplace. However, given their conclusion the claimant is not disabled, they clearly did not believe any such difficulty would prevent the claimant from working.

Tr. 30.

The ALJ is required to consider as opinion evidence the findings of State agency medical consultants and to explain the weight given to such opinions. *See* 20 C.F.R. § 416.927(f)(2)(i)-(ii); *see also* SSR 96–6P (1996), 1996 WL 374180 *2 (S.S.A.1996) (stating that an ALJ "may not ignore" the opinions of state agency medical consultants "and must explain the weight given to the opinions in their decisions"); *Sawyer v. Astrue*, 303 Fed.Appx. 453, 455 (9th Cir. 2008). "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa*, 143 F.3d at 1244. Here, however, the ALJ's reasoning in rejecting Dr. Fisher and Dr. Nelson's opinions relies less on a supported factual basis, or reference to specific evidence in the medical record, and more on pure assumptions and speculation. It does not make sense that in medical opinions expressly intended to assess Mr.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 15

Mendieta's vocational functional capacity that Dr. Fisher and Dr. Nelson would have offered opinions of what Mr. Mendieta was capable of doing, or would have difficulty doing, if they had not intended those statements as functional limitations. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (State agency consultants are considered "highly qualified ... experts in Social Security disability evaluation."). For instance, if Dr. Fisher and Dr. Nelson believed the medical evidence supported a finding that Mr. Mendieta was capable of carrying out more complex instructions or tasks they would have indicated as such in their opinions.

Moreover, the fact that Dr. Fisher and Dr. Nelson ultimately found Mr. Mendieta not disabled is not conclusive and does not absolve the ALJ of the obligation to either properly reject or to account for the substantive limitations contained in their opinions in the RFC. Although ALJs "are not bound by any findings made by [nonexamining] State agency medical or psychological consultants, or other program physicians or psychologists," ALJs must still "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled" because such specialists are considered "highly qualified ... experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and ultimately determine disability. *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R § 404.1545; *see Lemke v. Comm'r Soc. Sec. Admin.*, 380 Fed.Appx. 599, 601 (9th Cir. 2010). Here, the ALJ's RFC does not appear to contain any limitations in the areas of concentration, persistence and pace or on the simplicity or complexity of instructions or tasks Mr. Mendieta is capable of performing.

The ALJ's RFC limitation to tasks that could be learned within one year does not account for Dr. Fisher and Dr. Nelson's limitations.  Tr. 24.  Dr. Fisher and Dr. Nelson did not opine, nor did any other medical providers, that Mr. Mendieta was capable of performing tasks that could be learned within one year.  Furthermore, the limitation to tasks learned within one year constitutes a limitation on Mr. Mendieta's significant vocational preparation (SVP) level[9] but does not necessarily account for a limitation on the simplicity or complexity level of a given task or limitations on concentration, persistence and pace.  *See Ferguson v. Colvin*, 15-cv-01532, 2016 WL 7042076, at *2-3 (D. Or. Dec. 2, 2016) (SVP ratings "address the amount of time it takes to acquire the skills needed for a job" and are not synonymous with the simplicity of a task nor do they assess limitations in concentration, persistence, or pace); *Oxford v. Colvin*, 14-cv-5390-RBL-KLS, 2015 WL 226003, at *8 (W.D. Wash. Jan. 16, 2015) (quoting *Hall-Grover v. Barnhart*, 2004 WL 152983, at *3 (D. Me. April 30, 2004) ("'SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings.'"); *Nava v. Colvin*, 15-cv-1532, 2015 WL 5854074, at *6 (D. Or. Oct. 6, 2015) (SVP ratings do not assess a claimant's limitations in concentration, persistence, and pace).  Thus, the ALJ's limitation to tasks that can be learned within a year, while imposing an SVP limitation, does not adequately address Dr. Fisher and Dr. Nelson's opinion that Mr. Mendieta was capable

---

[9] "SVP" is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dictionary of Occupational Titles,* Appendix C, page 1009 (4th ed.1991).  SVP 1 means "short demonstration only"; SVP 2 means "anything beyond a short demonstration up to and including 1 month;" SVP 3 means "over 1 month up to and including 3 months;" SVP 4 means over 3 months up to and including 6 months; SVP 5 means over 6 months up to and including 1 year; SVP 6 means "over 1 year up to and including 2 years" and SVP 7 means "over 2 years up to and including 4 years." *Id.; see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230, n.4 (9th Cir. 2009).

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 17

of "carrying out at least simple instructions on a reasonably consistent basis", was capable of "simple, repetitive work tasks", or that he "would have difficulty with extended concentration and maintaining attendance/pace in the workplace." Tr. 111, 126, 132, 145.  To the extent the ALJ found these opinions vague or ambiguous he had a duty to develop the record to clarify the opinions, not to simply dismiss them as vague and include speculative limitations in the RFC with no clear basis in the medical evidence.  *See Smolen*, 80 F.3d at 1288; *Mayes*, 276 F.3d 453, 459–60.

Accordingly, under the circumstances, the Court finds the ALJ also erred in evaluating the opinions of Dr. Fisher and Dr. Nelson.  Because the ALJ failed to properly discount or account for Dr. Fisher and Dr. Nelson's opinions in the RFC or in the hypothetical to the VE, the Court cannot conclude this error was harmless.  *See Stout*, 454 F.3d at 1055-56.  On remand the ALJ should develop the record as necessary and reevaluate these opinions.

### B. Scope of Remand

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may remand for further proceedings if enhancement of the record would be useful.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990).  The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020.  "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

1101 (9th Cir. 2014).

Here, there is conflicting evidence in the record and it is not clear that the ALJ would be required to find Mr. Mendieta disabled if the medical opinion evidence were properly considered. Because the record does not compel a finding of disability, the Court finds it appropriate to remand this case for further administrative proceedings. *See Treichler*, 775 F.3d at 1107.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Dr. Misner, Dr. Widlan, Dr. Fisher and Dr. Nelson, develop the record as necessary, reassess and determine the RFC and reevaluate steps four and five with the assistance of a vocational expert as necessary.

DATED this 9th day of March, 2017.

JOHN C. COUGHENOUR
United States District Judge

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 19